## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

---

The Smitten Kitten, Inc., a Minnesota
corporation,
3010 Lyndale Avenue S.
Minneapolis, MN 55408,

Case No. 1:10-cv-00663

               Plaintiff,

**COMPLAINT**

v.

**JURY TRIAL DEMANDED**

Mike Fernandez, an individual, d/b/a
Sex Toys Revolutions,
5622 Ridge Road,
Cincinnati, OH 45213,

               Defendant.

---

Plaintiff The Smitten Kitten, Inc., for its claims against the defendant, Mike Fernandez, d/b/a Sex Toys Revolutions, states and alleges as follows:

### THE PARTIES

1.      Plaintiff The Smitten Kitten, Inc. ("TSK") is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota.

2.      Defendant Mike Fernandez, d/b/a Sex Toys Revolutions ("Fernandez"), is an individual citizen of Ohio, residing at 5622 Ridge Road, Cincinnati, OH 45213.

### JURISDICTION

3.      This Court has jurisdiction over this federal cause of action under 28 U.S.C. § 1331 and § 1338.

4.      Venue is proper in this district under 28 U.S.C. § 1391(b) and § 1391(c).

**FACTS**

A.    **TSK'S OWNERSHIP OF THE SMITTEN KITTEN® TRADEMARK**

5.    TSK is in engaged in business of selling high quality adult sex toys and related goods to a national and international retail market, and since June 2, 2003, its traditional and online retail outlets have been continuously branded, promoted, advertised and identified with the "Smitten Kitten®" trademark.

6.    As a result of such continuous and exclusive use, the Smitten Kitten® trademark has served to identify and distinguish TSK's adult sex toy outlets from other traditional and online retail adult sex toy establishments, and said mark has acquired a secondary and distinctive association with TSK's traditional and online retail outlets.

7.    On or about November 21, 2006, the United States Patent and Trademark Office granted TSK the sole and exclusive use of the Smitten Kitten® trademark for retail sex toy stores in International Class 35.  A true and correct copy of Trademark Registration No. 78680549 is attached as Exhibit A and incorporated by reference.  TSK's first use of the Smitten Kitten® trademark in commerce was June 2, 2003.

8.    The above Trademark Registration remains in full force and effect.

9.    Since 2003, TSK has expended approximately $675,000 in the promotion and advertisement of the Smitten Kitten® trademark.

10.    As a result of substantial sales and advertising by TSK of its products, the Smitten Kitten® trademark has become favorably known to the public and the trade, and identifies and distinguishes the source of origin of TSK's products.  TSK's registered trademark and the substantial goodwill attained represent a valuable and irreplaceable asset of TSK.  As a result,

2

TSK's products have earned commercial success, recognition, and acceptance in the marketplace.

11.     Since 2003, TSK has received unsolicited media coverage, including: *Minneapolis City Pages* awards for "Best Store for Sex Toys" in 2007, 2008 and 2009 and for "Best Adult Video Store" in 2005; *Lavender Magazine*'s The Fab 50 in 2007 for "Best Place to Buy Adult Toys'" recommendation in Valentine's Day 2009 gift guide by *The Rake – Secrets of the Sweethearts*; *Minneapolis-St. Paul Magazine*'s "The Best of the Twin Cities Award" for "Best Sex Store" in 2007 and 2009; and *Vita.mn*'s "Top 10 User Pick" on its List of Lists for "Best Place to Find Sex Toys" in 2009; and has been featured in various trade publications and websites, including Janes Guide, Xbiz, StorErotica, AVN, *Glamour* Magazine, *Marie Claire* Magazine, *Go* Magazine, *Curve* Magazine, and www.feministing.com, all of which have served to promote and strengthen its "Smitten Kitten®" trademark.

12.     The Smitten Kitten® trademark has become associated with TSK's high quality products and TSK's distinct programs and activities, including:  (a) TSK's education-based retail programs (world class educational programming in-store and off-site; highly trained sex education instructors with backgrounds in sexual health, gender and women's studies; one-on-one customer interaction; venue for out-of-town sex educators; regional workshops and lectures on sex related topics; and an integration of educational content into all marketing activities); (b) TSK's Coalition Against Toxic Toys program (first sex toy store to bring awareness to toxicity issues in toys; promotion of consumer advocacy regardless of where people shop; provision of free online resources for safer shopping practices; workshops and lectures on sex toy toxicity and safer shopping practices; promotion of industry-wide change; and resource for other independent sex toy stores); (c) TSK's community development activities (offering space to like-minded

3

community organizations for events and meetings; sponsorship of local community arts, theater and sports teams; donations to charity – over $75,000 since 2003; provision of living wage, benefits and continuing education for employees; and active members of local and national chambers of commerce); (d) TSK's store philosophy and aesthetics (space that is gender/orientation free and affirming of all types of people and all sexual orientations; maintenance of body and sex positive ethics; open, well-lit and comfortable environment; commitment to sell only well-made, nontoxic and functional products; and promotion of local artists and artisans); and (e) TSK's nontoxic party program (the only party program to offer all nontoxic products and provide attendees with education and information as well as products; parties conducted in a nonbiased, sex-positive and diversity-affirming manner; and educators are paid a living wage).

**B.   FERNANDEZ' TRADEMARK INFRINGEMENT**

13.    Fernandez is engaged in the business of retail adult sex toy sales, doing business as "Sex Toy Revolutions."

14.    Since December 19, 2008, Fernandez has operated online Sex Toy Revolutions adult sex toy outlets doing business throughout the United States and the world that are identified and accessed by consumers through the Internet URL Domain name identifiers: "www.smittenkittenlingerieboutique.com," "www.talksex-asksmittenkitten.com," and "www.myspace.com/smittenkittens_blog."

15.    TSK has never authorized, licensed or consented to Fernandez' use of the Smitten Kitten® trademark or any similar marks.

16.    At all relevant times, Fernandez had both constructive and actual knowledge of TSK's exclusive rights to the Smitten Kitten® trademark, and he knew that he was not

4

authorized, licensed or permitted by TSK to use said trademark in any manner connected with the sale of adult sex toys.

**C.    ACTUAL AND LIKELY CONFUSION**

17.    Both TSK and Fernandez sell adult sex toys online.

18.    TSK's online stores are accessed by consumers on the Internet at the URL Domain Name www.smittenkittenonline.com.  A true and correct copy of a page from TSK's online catalog of products at www.smittenkittenonline.com is attached as Exhibit B and incorporated by reference.

19.    Fernandez' online stores are accessed by consumers on the Internet at or by links from the URL Domain Names www.smittenkittenlingerieboutique.com, www.talksex-asksmittenkitten.com, and www.myspace.com/smittenkittens_blog.

20.    A true and correct copy of the first page from Fernandez' online catalog of products at, or accessed by link from www.smittenkittenlingerieboutique.com, www.talksex-asksmittenkitten.com, and www.myspace.com/smittenkittens_blog is attached as Exhibit C and incorporated by reference.

21.    Because Internet search engines locate business references by key words and phrases, consumers shopping for adult sex toys by searching for various combinations of the words "Smitten," "Kitten," "Adult," "Sex" or "Sex Toys," on popular Internet search engines, including *Google*, *Yahoo!*, *Bing, Yelp, Ask.com* and others will be directed not only TSK's online store at www.smittenkittenonline.com, but will also will be directed to Fernandez' online retail outlets at www.smittenkittenlingerieboutique.com, www.talksex-asksmittenkitten.com, and www.myspace.com/smittenkittens_blog.

5

22.     As a result of the similarity of products, URL domain names and online retailing and Internet search terms, and the commonality of current and prospective customers, Fernandez' unauthorized and unlawful user of TSK"s "Smitten Kitten®" trademark is likely to cause confusion, mistake and/or deception in the marketplace.

23.     Fernandez' unauthorized and unlawful use of TSK's Smitten Kitten® trademark has also caused actual confusion in the marketplace, as reported to TSK by one vendor who expressed a belief that there was an affiliation between Fernandez' online retail outlets and TSK.

**D.      DAMAGES CAUSED BY FERNANDEZ' INFRINGEMENT**

24.     Fernandez' continued unauthorized and unlawful use of TSK's Smitten Kitten® trademark creates the false and misleading impression that TSK sponsors or otherwise approves of his use of the mark, and/or endorses or profits from the products and services marketed, advertised, and sold in interstate commerce, all of which constitute a false designation of origin, create a substantial likelihood of confusion and deceive as to the affiliation, association or connection of the true owner of the mark.

25.     Fernandez' continued unauthorized and unlawful use of TSK's Smitten Kitten® trademark has been, and is trading on the good will associated with TSK's trademark and deceiving the public in furtherance of Fernandez's business.

26.     Fernandez has willfully infringed and sought to appropriate the Smitten Kitten® trademark.

27.     As a direct and proximate result of Fernandez' unauthorized and unlawful use of the Smitten Kitten® trademark, TSK has suffered and/or will suffer economic loss; Fernandez has unjustly benefited and profited from the good will associated with the Smitten Kitten® trademark; and TSK has suffered and will suffer irreparable harm.  Unless Fernandez is enjoined,

6

the above-described acts of Fernandez will continue and will impair the value of the Smitten Kitten® trademark and the good will associated therewith.  TSK therefore has no adequate remedy at law.

28.     Fernandez has been unjustly enriched by his infringing and unfair activities and TSK is entitled to an accounting for all Fernandez's profits derived from infringing sales.

<u>COUNT I</u>

**TRADEMARK INFRINGEMENT**
**(LANHAM ACT §32, 15 U.S.C. §1114)**

29.     TSK restates and incorporates by reference Paragraphs 1 through 28 above as if fully set forth here.

30.     Fernandez' unauthorized use of the Smitten Kitten® trademark constitutes a violation of TSK's exclusive trademark rights under 15 U.S.C. §1114, for which TSK is entitled to compensatory and exemplary relief, including treble damages and attorneys' fees, as  set forth in 15 U.S.C. §1117.

31.     Fernandez continues to do the acts complained of herein, and unless restrained or enjoined will continue to do so, all to TSK's irreparable damage.   It would be difficult to ascertain the amount of compensation which could afford TSK adequate relief for such continuing acts, and a multiplicity of judicial proceedings would be required.  TSK's remedy at law, as to continuing infringement, is therefore inadequate and TSK is entitled to injunctive relief as set forth in 15 U.S.C. § 1116.

## COUNT II

### FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### (LANHAM ACT §43(a), 15 U.S.C. §1125(a))

32.     TSK restates and incorporates by reference Paragraphs 1 through 31 above as if fully set forth here.

33.     Fernandez' unauthorized use of TSK's Smitten Kitten® trademark constitutes a false designation of origin, a false or misleading description of fact, a false representation, and/or unfair competition in violation of 15 U.S.C. §1125(a), for which TSK is entitled to compensatory and exemplary relief, including treble damages and attorneys fees, as set forth in 15 U.S.C. §1117.

34.     Fernandez does not have authorization to use the Smitten Kitten® trademark.  By his use of the Smitten Kitten® trademark on his website, Fernandez has falsely designated, described and/or represented that he has authorization to use the Smitten Kitten® trademark. Fernandez has falsely designated and represented a connection, affiliation, association, sponsorship, or approval of or between TSK and Fernandez.

35.     Fernandez has caused these goods associated with the false designation and false representation to enter interstate commerce.

36.     Fernandez's unauthorized use of the Smitten Kitten® trademark is likely to cause confusion, to cause mistake, and to deceive as to an affiliation, connection, or association between Fernandez and TSK, in violation of 15 U.S.C. § 1125.

37.     Fernandez continues to do the acts complained of herein, and unless restrained or enjoined will continue to do so, all to TSK's irreparable damage.   It would be difficult to ascertain the amount of compensation which could afford TSK adequate relief for such continuing acts, and a multiplicity of judicial proceedings would be required.  TSK's remedy at

law, as to continuing unauthorized use, is therefore inadequate and TSK is entitled to injunctive relief as set forth in 15 U.S.C. § 1116.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff TSK, respectfully requests that the Court:

(a)     Grant a permanent injunction pursuant to 15 U.S.C. §1116, enjoining and restraining Fernandez and his agents, servants and employees from directly or indirectly using the Smitten Kitten® trademark for the purpose of promoting, advertising or identifying adult sex toy outlets or stores, including but not limited to all promotional materials or advertising, or any similar marks or names which are likely to cause confusion, mistake or to deceive, specifically including "Smitten Kitten;" and

(b)     Order, pursuant to 15 U.S.C. §1118, that all labels, signs, prints, packages, wrappers, receptacles and advertisements in the possession or control of Fernandez, or those in privity with him, bearing the Smitten Kitten® trademark, or any similar marks or names which are likely to cause confusion, mistake or to deceive, specifically including "Smitten Kitten," and all plates, molds, matrices and other means of making same, shall be delivered up and destroyed; and

(c)     Order, pursuant to 15 U.S.C.§1117, that Fernandez shall account to TSK for any and all profits derived by him from the infringing use, and for all damages, costs and attorneys fees incurred by TSK by reason of said acts of infringement, false designation of origin and unfair competition complained of herein; and

(d)     Award, pursuant to 15 U.S.C. §1117, treble the amount of actual damages suffered and/or punitive and exemplary damages in favor of TSK and against Fernandez by reason of Fernandez' willful and intentional infringement; and

9

(e)     Award TSK its costs and disbursement; and

(f)     Award all other relief which the Court deems to be just and equitable.

                        Respectfully submitted,

                        _s/ Amy Ruth Ita_____
                        Amy Ruth Ita (0074520), Trial Attorney
                        Barnes and Thornburg LLP
                        21 East State Street, Suite 1850
                        Columbus, Ohio 43215-4219
                        Telephone: (614) 628-0096
                        Facsimile: (614) 628-1433
                        Email: amy.ita@btlaw.com

                        *Attorneys for Plaintiff*